**Jeffrey LYLES and Neil Meyer, Plaintiffs,**

v.

**K–MART CORPORATION, a Michigan Corporation, Defendants.**

No. 79–102–Civ–Oc.

United States District Court, M. D. Florida, Ocala Division.

Aug. 4, 1981.

Christopher C. Ford, Ford & Minkoff, Tavares, Fla., for plaintiffs.

Thomas P. Moran, Orlando, Fla., for defendants.

OPINION

CHARLES R. SCOTT, *District Judge.*

This is an action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter 'the Act'), to recover wages allegedly owed to plaintiffs for uncompensated overtime labor performed on behalf of the defendant corporation. Pursuant to Fed.R.Civ.P. 52, the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. The plaintiffs are Jeffrey Lyles and Neil Meyer.

2. The defendant is K-Mart Corporation, a Michigan corporation, which operates more than 2,100 retail department stores nationwide.

3. The plaintiffs were employed as "assistant managers" at the K-Mart store in Mt. Dora, Florida. The Mt. Dora store has gross sales approximating $5 million annually and serves approximately 500 to 600 customers daily. The store has roughly 43,000 square feet of selling space and employs from 60 to 80 employees.

4. All employees of the store are compensated on the basis of an hourly wage, except for the store manager and assistant managers.

5. Jeffrey Lyles was a salaried employee who was compensated at the rate of $183.47 per week from September 22, 1977 to April 5, 1978; $192.70 from April 6, 1978 to December 13, 1978; and thereafter at the rate of $206.54 per week until his employment was terminated on February 14, 1979.

6. Neil Meyer was a salaried employee who was compensated at the rate of $263.68 per week from May 11, 1978 to September 7, 1978; $276.93 per week from September 8, 1978 to December 13, 1978; and thereafter at the rate of $288.46 per week until his employment was terminated on February 20, 1979.

7. Both plaintiffs worked a substantial number of hours in excess of 40 hours per week for which they never received compensation at the time and one-half rate. 29 U.S.C. § 207.

8. The focal point of this action is the executive exemption provision of the Act, 29 U.S.C. § 213(a)(1), as explicated by the administrative regulations, 29 C.F.R. § 541.1 et seq. The defendant raised the provision as an affirmative defense. Title 29 U.S.C. § 213(a)(1) provides that an "employee employed in a bona fide executive ... capacity" is exempt from the overtime provisions of the Act. In light of the Court's determination that plaintiffs were indeed exempt employees within the meaning of the Act, see text infra, it is unnecessary to explore plaintiffs' claims as to the actual number of overtime hours worked.

9. The Mt. Dora K-Mart store was divided into three zones and each assistant manager was in charge of one zone. Within each zone there were several departments. The assistant manager was solely responsible for the activities within his zone.

10. As with most other disputed issues in this case, the testimony regarding the number of employees supervised by each assistant manager was in conflict. Lyles, however, testified that he supervised at least 20 employees. This strikes the Court as the most reasonable testimony in light of the fact that each assistant manager supervised approximately one-third of the store and the store employed from 60 to 80 employees.

11. The assistant managers conducted initial employment interviews, made recommendations as to hiring, trained new employees, disciplined employees, and recommended the termination of employees. Their recommendations as to hiring and firing were given particular weight.

12. The assistant managers reviewed and sometimes completed numerous types of reports. These included profit reports, merchandise statements, cash reports, security activity reports, etc. The assistant managers would affix their signatures to the reports after reviewing or completing them.

13. The assistant managers met at least twice each day with the store manager to discuss store policies and strategies.

14. Each assistant manager was provided with a document bearing the heading "Areas of Responsibility for Assistant Managers." The document lists 30 duties, all of which are of a supervisory nature, that assistant managers were expected to perform. Mrs. Mary Jane Mock, a former assistant manager at the Mt. Dora K-Mart store, testified that the document accurately depicted the activities performed by an assistant manager. The Court finds Mrs. Mock to have been a credible witness.

15. While employed by K-Mart, both plaintiffs completed forms bearing the

heading "Tests to Qualify As An Executive." Lyles' form reflects that his work time was apportioned among his various job duties as follows:

Supervision: ────────────────60 percent
Store Planning: ────────────────10 percent
Control:─────────────────── 5 percent
Personnel Development and Training: ───15 percent
Miscellaneous-Exempt Responsibilities: ── 2 percent

GRAND TOTAL EXEMPT DUTIES: ───92 percent

NON-EXEMPT DUTIES: ───────── 8 Percent[1]

Lyles' signature followed the statement: "I hereby certify that the above is an accurate breakdown of my duties as an assistant manager at the K-Mart Corporation."

Meyer's form reflects that his work time was apportioned among his various work duties as follows:

Supervision: ──────────────────25 percent
Store Planning: ────────────────30 percent
Control: ──────────────────── 4 percent
Personnel Development and Training: ───10 percent
Miscellaneous-Exempt Responsibilities: ─── 1 percent

GRAND TOTAL EXEMPT DUTIES: ───70 percent

NON-EXEMPT DUTIES: ──────────30 Percent

Meyer's signature followed the statement quoted above certifying that the form accurately depicted the breakdown of his duties.

It is evident from Meyer's form that an alteration was made after it was initially completed. Originally, Meyer had filled in the form to show a 50–50 breakdown between exempt and non-exempt duties. At trial, Meyer testified that the store manager, Roger Hamilton, would not accept the form unless Meyer changed the figures. Hamilton testified that he did not coerce Meyer to change the figures. Rather, Hamilton testified that he merely discussed the breakdown of duties with Meyer and that Meyer voluntarily decided that he was spending more than ten percent of his time in Store Planning.

Mrs. Mock testified that she spent approximately 15 percent of her work time engaging in non-exempt duties while employed by K-Mart as an assistant manager.

16. At trial, plaintiffs claimed they spent 80 to 90 percent of their time performing non-exempt work. The Court finds that this testimony lacked credibility, particularly in light of the "Executive Test" forms the plaintiffs completed. Plaintiffs testified that they spent most of their time moving stock, waiting on customers, unloading trucks, sweeping floors and engaging in other similar menial labor. All of the evidence on this matter, with the exception of the testimony of plaintiffs and Janet Wall, established that this was inaccurate.

Hamilton, the store manager, estimated that Lyles spent roughly 20 to 30 percent of his time performing menial labor and that Meyer spent less than five percent of his time performing such labor. Mrs. Mock, a former assistant manager, placed this figure at ten percent for Meyer and "less than that" for Lyles. Josephine Peebles, former personnel manager at the Mt. Dora store, testified that plaintiffs engaged in menial tasks on an infrequent and irregular basis. Other employees testified that they saw the plaintiffs stocking shelves or waiting on customers only occasionally.

1. The forms contained numerous sub-headings under each category of job duty. For example, under "Supervision", the form lists the following job duties:

Two or more employees
Customer service
Checking condition of counters
Checking displays in merchandise assortment on sale
Checking invoices at counter to see if new merchandise is on sale and at right price
Checking sales information bulletins
Okaying orders and checking turnover
Advising and directing employees
Advising employees on how and what to buy
Adjusting customer complaints that are other than routine
Directing customers
Conducting meetings with employees
Evaluating of employee's performance
Arranging employee's schedules
Shifting employees to meet demands of business
Supervising cash register operation
Supervising sales floor to protect against pilferage
Supervising the trimming of windows
Actual buying (not of routine type) of departments where judgment must be used in selecting quantities and determining whether the items should be promoted or discontinued. In other words, where buying is, in fact, merchandising the department. A large number of K Mart departments fall in this category.

Janet Wall testified for plaintiffs. She estimated that both Meyer and Lyles spent roughly 50 percent of their time engaging in activities such as unloading trucks, moving stock, stocking shelves, assisting customers, etc. At her deposition, however, Wall was unable to offer any type of percentage breakdown.[2] Moreover, it is difficult to comprehend how Wall could have observed the daily activities of plaintiffs when she was generally confined to the camera and jewelry department, which occupies only a small portion of the store's 43,000 square feet of selling space.

The Court finds that Wall's testimony lacked credibility. She appeared to be an extremely disgruntled former employee. Her testimony established that she had "more than a mild dislike" for Hamilton, the store manager, and had "a few private names" reserved for him. Motivation for her bias might stem from the fact that she was formally reprimanded three times within the last two months of her employment.

The Court finds that both Lyles and Meyer spent a minimum of 70 percent of their time engaged in managerial or supervisory duties.

17. The plaintiffs routinely performed several discretionary functions. Each had several departments under his control, e. g.,

Meyer testified that he was responsible for at least 15 departments. All the employees within the assistant manager's zone were under his direct supervision and he was responsible for instructing them on how to perform their job duties. The plaintiffs conducted pre-employment interviews and made recommendations as to hiring. They had the authority to discipline employees, which authority they exercised. They made recommendations as to the termination of employees. Their recommendations as to hiring and firing were given particular weight. They were responsible for training new employees and even made suggestions as to compensation for employees.

One of the duties of plaintiffs was to surveil the store for shoplifters. Only the assistant managers or store manager had the authority to apprehend a shoplifter.

The plaintiffs were responsible for monitoring the store's merchandise. In this regard, they reviewed merchandise orders made by employees and discussed any errors contained in those orders. It was their responsibility to determine if an item was not selling well and to inform the store manager of that fact. The plaintiffs reviewed invoices of incoming merchandise to verify actual receipt of that merchandise prior to authorizing payment. It was the

2. At her deposition, in response to a request to break down the percentage of time spent by the plaintiffs on various job duties, the following exchange occurred:

Answer: "For me to say in an eight-hour day each of them spent two hours waiting on customers and one hour checking counters, I couldn't do that."
Question: "If you thought about it, you wouldn't be able to come up with it?"
Answer: "When you're doing your job yourself, it's very difficult to be watching and keeping track of what the other man is doing, other than in just generalities."
Question: "In generalities, do you have any kind of certainty?"
Answer: "Generality, I could say, yes Mr. Meyer and Mr. Lyles both stocked shelves quite frequently."
Question: "But could you break down the time in one category or another?"
Answer: "Not by hour or minute. I would say if it took a job six hours to be done, they spent six hours doing it."

Question: "But let's say overall time on the job, could you make that kind of breakdown?"
Answer: "I would say the most overall time on the job, ninety-eight percent of the time they were busy, but I can't say exactly doing what."
Question: "You're sure about that?"
Answer: "To the best of my knowledge. I'm not going to say that they worked eight hours and forty-two minutes or anything like that, because I wouldn't have any way of knowing for certain, or when they were supposed to be working in the stockroom if they were back there drinking coffee, I have no idea. I have no way of knowing."
Question: "You weren't keeping track of what they were doing?"
Answer: "I had no reason to. I had enough to do in my own department, in keeping track of that."

duty of plaintiffs to conduct price checks in stores throughout Mt. Dora to ensure that K-Mart's prices remained competitive with those stores. The assistant manager recommended to the store manager which merchandise to feature in "Blue Light Specials" and also which merchandise should be donated to charity.

It was the responsibility of the assistant managers to approve checks over $50. Only the assistant managers and the store managers were provided with the combination to the safe. The assistant managers were bonded to handle the money that came from the cash register operators.

18. No records were kept as to the overtime hours worked by the assistant managers.

## CONCLUSIONS OF LAW

19. The Court has jurisdiction of the parties herein and the subject matter of this action. 29 U.S.C. § 216(b); 28 U.S.C. § 1331.

20. At all times pertinent hereto, K-Mart Corporation has been an enterprise engaged in commerce within the meaning of the Act, employing individuals engaged in commerce or who handled, sold or otherwise worked with goods or materials that have been moved in or produced for commerce, thereby subjecting all such individuals to the terms of the Act. 29 U.S.C. § 203(s).

21. The law governing disposition of this action is relatively straight-forward. Plaintiffs established a prima facie case entitling them to relief by showing that they worked hours in excess of 40 hours per week for which they were not compensated. The defendant raised as an affirmative defense the executive exemption contained in 29 U.S.C. § 213(a)(1) and the corresponding administrative regulations.

■■■ 22. The burden of proving the applicability of the executive exemption is upon the defendant. *Idaho Sheet Metal*

*Works, Inc. v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Marshall v. Sundial Associates, Ltd.*, 588 F.2d 120 (5th Cir. 1979). The exemption is to be applied only to those clearly and unmistakably within the terms and spirit of the exemption. *Hodgson v. Colonnades, Inc.*, 472 F.2d 42 (5th Cir. 1973).

■■■ 23. The Court finds the defendant carried its burden of proving that both Lyles and Meyer were bona fide executives and, hence, exempt from the overtime provisions of the Act.

24. This is one of those rare cases in which the parties are in substantial agreement as to the applicable law. The parties agree that the applicable test for determining executive status is that contained in the Code of Federal Regulations, 29 C.F.R. § 541.1.[3] The parties further agree that the so-called "long test" applies to Lyles whereas the "short test" applies to Meyer. Title 29 C.F.R. § 541.1 reads as follows:

The term "employee employed in a bona fide executive . . . capacity" in section 13(a)(1) of the act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does

---

3. The administrative regulations are entitled to "controlling weight" in construing the provisions of the Fair Labor Standards Act. *May-* *hue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972).

not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided*, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: *Provided*, That an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

25. As a salaried individual who was compensated at a rate of not less than $155 per week but not more than $250 per week, Lyles' position is governed by the long test; that is, in order for the Court to find that Lyles was an exempt executive, the Court must determine that he met each of the criteria set forth in 29 C.F.R. § 541.1.

26. In accordance with the findings of fact set forth *supra*, the Court finds that Lyles' primary duty consisted of the management of a customarily-recognized subdivision of the enterprise in which he was employed. The Court finds that Lyles customarily and regularly directed the work of two or more other employees. The Court finds that Lyles' recommendations as to the hiring or firing and as to the advancement and promotion or other change of status of other employees were given particular weight. The Court finds Lyles customarily and regularly exercised discretionary powers. Finally, the Court finds that Lyles did not devote as much as 40 percent of his hours of work in the workweek to non-exempt duties, i. e., activities other than those contained in 29 C.F.R. § 541.1(a), (b), (c) and (d).

27. As an employee who was compensated at a rate of not less than $250 per week, Meyer's position is governed by the short test; that is, in order for the Court to find that he was an exempt executive, the Court must find only that his primary duty consisted of the management of the enterprise in which he was employed or a customarily-recognized subdivision thereof and that he customarily and regularly directed the work of two or more other employees.

In accordance with the findings of fact set forth *supra*, the Court finds that Meyer's primary duty consisted of the management of a customarily-recognized subdivision of the enterprise in which he was employed. The Court further finds that Meyer customarily and regularly directed the work of two or more other employees therein.

28. A determination of whether an employee's primary duty is the management of the enterprise in which he is employed must be based upon an evaluation of all relevant facts. 29 C.F.R. § 541.103. In other words, the court must focus on the overall employment picture rather than concentrate on isolated occurrences. A good rule of thumb to apply in the ordinary case is to determine whether management functions occupied the major part, i. e., 50 percent or more, of the employee's work time. 29 C.F.R. § 541.-103. The Court has already found that plaintiffs spent at least 70 percent of their work time during the workweek engaged in exempt duties. This conclusion is buttressed by the list of activities considered to be exempt contained in 29 C.F.R. § 541.-102(b). Included in that list are the following types of work: interviewing, selecting

and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the technique to be used; and apportioning the work among the workers. Plaintiffs regularly engaged in most, if not all, of these activities. Moreover, the Court finds that the "zones" of which plaintiffs were in charge constituted customarily recognized subdivisions of the Mt. Dora K-Mart store.

29. The regulations require that an exempt individual supervise only two employees. Although the testimony as to the number of employees supervised by plaintiffs was in conflict, no one contended that each plaintiff supervised less than two employees. Indeed, Lyles testified that he supervised at least 20 employees.

30. The evidence established that plaintiffs had the authority to hire or fire other employees or that their suggestions and recommendations as to the hiring or firing and as to advancement and promotion or any other change of status of other employees were given particular weight. The testimony of Josephine Peebles, former personnel manager at the Mt. Dora K-Mart store, accompanied the introduction into evidence of various exhibits supporting the authority of plaintiffs in this regard. Ms. Peebles identified several exhibits consisting of disciplinary interview reports and separation reports. The signatures of either Meyer or Lyles appeared on these reports and Ms. Peebles testified as to the participation of either Meyer or Lyles in the disciplinary or separation interviews.

Plaintiffs state in their proposed findings of fact that, although Lyles did not have the authority to hire or fire employees, his recommendations as to the hiring and firing of employees were given particular weight. As for Meyer, Ms. Peebles testified that he himself had the authority to terminate employees and that he exercised such authority on occasion. Of course, because Meyer's position is governed by the "short test" set forth in the regulations, it is unnecessary for the Court to find that he had the authority to hire or fire employees or that his recommendations in this regard were given particular weight.

31. The Court has already set forth numerous discretionary functions performed by the plaintiffs. It is unnecessary to repeat them. Suffice it to say that the very essence of the plaintiffs' job involved the utilization of discretion. Each plaintiff was responsible for approximately one-third of the Mt. Dora K-Mart store. It was the job of each plaintiff to control all of the departments and employees within his zone. Control of such a large area and a relatively large number of employees necessarily requires the exercise of discretion. Indeed, at night, when the store manager had left, either Lyles or Meyer was responsible for the entire store. This was also true when the store manager went on vacation.

32. Because plaintiffs were bona fide executives within the meaning of the Act, the defendant was not required to keep records of the number of overtime hours worked by plaintiffs. 29 C.F.R. § 516.3.

33. In accordance with the findings of fact and conclusions of law contained herein, the Court will enter a judgment in favor of defendant and against plaintiffs and plaintiffs shall take nothing.

It will be so ordered.