**William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff–Appellee,**

v.

**NORMAN'S COUNTRY MARKET, INC., David A. Norman and India A. Norman, Defendants–Appellants.**

No. 86–3780.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1988.

Alan M. Koral, Vedder, Price, Kaufman, Kammholz & Day, New York City, for defendants-appellants.

Paula Wright Coleman, William J. Stone, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for plaintiff-appellee.

Before VANCE and CLARK, Circuit Judges, and GARZA*, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

This appeal is brought by Norman's Country Market, Inc., David A. Norman and India A. Norman (Norman) following a determination by the district court that

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by desig-

they were in violation of a consent judgment entered on September 14, 1982, and had additional violations of the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. § 201 *et seq.* The Normans had agreed to pay a total of $31,458.86 in back wages to a group of 41 employees for overtime wages allegedly not paid. William E. Brock, Secretary of Labor, United States Department of Labor (Brock) alleged in the civil contempt proceedings that Norman improperly classified eight employees as department managers and thereby failed to pay them required overtime wages at time and one-half, failed to keep adequate or accurate records of the hours worked by employees subject to the overtime wage provisions of the FLSA, failed to pay overtime wages to a group of employees with whom they claimed to have made agreements on a weekly wage that included a guaranteed number of overtime hours at one and one-half times their hourly rates, failed to pay overtime wages to several employees who they knew to be working "off the clock" and that two persons claimed by Norman not to be employees were in fact employees, and not properly paid. Additional allegations that Norman coerced five employees to return the back wage checks awarded to them and that they terminated three other employees for refusing to return their back wage checks were also included.

To begin an analysis of this case, we will review the district court determination of whether Norman properly classified several of its employees as "executive employees" exempt from minimum wage and overtime requirements of the FLSA.

Norman asserts that the district court erroneously applied a "majority of time" standard for determining exempt managerial status and that the district court failed to consider each manager individually. We disagree.

The pertinent portions of 29 U.S.C. § 213(a)(1) which exempts an employer from §§ 206 and 207 is as follows:

nation.

(a) the provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—

(1) any employee employed in a bona fide executive ... capacity ...

The regulation contains two tests, one is a multi-part test and the other is known as the "short test". The short test can be used to determine executive exemption when an employee is paid $250.00 per week or more, so long as his primary duty is management of an enterprise or a department thereof, and he or she customarily and regularly directs the work of two or more employees.[1]

"Primary duty," is defined at 29 C.F.R. 541.103 and states in part as follows:

A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time.

Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor, for example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management

---

1. The full text of 29 C.F.R. § 541.1 entitled "Executive", states as follows:

The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department *of* subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees on whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion of any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment, who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a)

through (d) of this section: *Provided,* that this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, who owns at least a 20–percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: *Provided,* that an employee who is compensated in a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed on or customarily recognized department or subdivision thereof, and includes the customary and regular discretion of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

duties as the day-to-day operations require. He will be considered to have management as his primary duty.

\*    \*    \*    \*    \*    \*

"The burden of proving the applicability of the executive exemption is upon the defendant. The exemption is to be applied only to those clearly and unmistakeably within the terms and spirit of the exemption." *Lyles v. K–Mart Corporation,* 519 F.Supp. 756, 760 (M.D.Fla.1981).

The trial court held Norman did not discharge his burden of proof, and in doing so made many credibility determinations.

The district court stated: "Because defendants have failed to sustain their burden of proving that the primary duty of these employees was the management of their departments, the court must conclude that they are not exempt as executives under either of the regulations tests." Although it was not necessary for the district court to examine Norman's claims under both tests, it nevertheless did.[2] It has been well settled that the district court has the opportunity to observe the witnesses and their demeanor, and is, therefore, in the best position to make credibility determinations, subject only to the clearly erroneous rule of Fed.R.Civ.P. 52(a), *Rodriguez v. Jones,* 473 F.2d 599, 604 (5th Cir.) *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973).

▄ After carefully reviewing the record, we agree with the district court's determination. The employees in question were nothing more than "working foremen." Although each of them may have had a duty which is normally recognized as that of a manager's responsibility, looking at each one individually and at the actual work performed we can not say they qualified as a "bona fide executive."

Therefore, the district court's determination that all eight employees [3] did not quali-

fy under the executive exemption was not clearly erroneous.

Norman's second point of error is that the district court erred as a matter of law in ignoring the agreed wage plans for guaranteed weekly overtime. We disagree, except as to Edgar Morales.

The guaranteed weekly plan is governed by 29 U.S.C. § 207(g)(3), which states in part:

> "No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum work week applicable to such employee under such subsection.

\*    \*    \*    \*    \*    \*

> (3) is computed at a rate not less than one and one-half times the rate established by such agreement or understanding as the basic rate to be used in computing overtime compensation thereunder: *Provided,* that the rate so established shall be authorized by regulation by the administration as being substantially equivalent to the average hourly earnings of the employee, exclusive of overtime premiums, in the particular work over a representative period of time; and if (i) the employee's average hourly earnings for the workweek exclusive of payments described in paragraphs (1) through (7) of subsection (c) of this section are not less than the minimum hourly rate required by applicable law, and (ii) extra overtime compensation is properly computed and paid or other

---

2. It was not disputed that the employees in question each earned over $250 per week, making the "short test" applicable. For those employees who earn less that $250 but more than $155 per week, then the multi-part test of § 541.1 would be applicable.

3. The eight employees are David Butts, Kenneth English, Kenneth Lott, Wayne Norman, Steve Prescott, Clifton Art Smith, Andrew Strickland and William Edwards.

forms of additional pay required to be included in computing the regular rate.

Norman argues the payment of flat weekly salaries to some of their employees was valid.[4] Under this plan, overtime pay is computed at one and one-half times the basic rate agreed upon by the employer and the employee. The basic rate remains constant from workweek to workweek, but the employees' wages for each workweek will vary according to the number of overtime hours. We believe that a proper application of a wage plan must contain two important factors. First, there must be some agreement or understanding between the employer and the employee establishing the basic rate before performance of the work. Second, any overtime hours must be compensated at not less than one and one-half times the basic rate.

If an employer invokes a wage plan exception, then he has the burden of affirmatively showing that each of the essential conditions to the exception are met. *Foremost Dairies, Inc. v. Wirtz*, 381 F.2d 653, 656 n. 4 (5th Cir.1967) *cert. denied* 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968). It has been held "... that this Act [FLSA] is to be interpreted liberally with exceptions narrowly construed against those seeking to assert them." *Wirtz v. Jernigan*, 405 F.2d 155, 158 (5th Cir.1968) citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295–296, 79 S.Ct. 756, 759–760, 3 L.Ed.2d 815 (1959).

■ Paul Lott's testimony indicates he simply had an agreement to work 55 hours and to be paid $325 a week.[5] He never stated it was his understanding that he would be paid a certain amount for the first 40 hours and one and one-half times that amount for the additional 15 hours. Norman testified to the contrary. The district court was again left with a credibility determination; we do not believe it was clearly erroneous.

■ A second employee to testify to a wage agreement was Edgar Morales. On direct testimony Mr. Morales states:

\* \* \* \* \* \*

(by Rafael Batine)

Q. Were you a salaried employee or were you an hourly employee?

A. Okay. I was paid for forty hours. I was—my pay was salary, lets say, because I worked forty hours regular time; and overtime, I was not to work over fifty hours.

\* \* \* \* \* \*

On Cross examination Mr. Morales states:

(by William C. Andrews)

Q. I am going to show you the government exhibit number 1, and ask you to look at the week ending March 25, and you were paid $160. Was that for forty hours?

A. That is for the forty hours. Right.

Q. And then there was $60 overtime?

A. Overtime.

Q. So that would mean you were being paid $4.00 an hour straight time and $6.00 an hour overtime; is that correct?

A. Yes.

\* \* \* \* \* \*

Q. Down on September 2nd, it looks like that your—it went from $160 on your straight time column, to $247. Why did that increase, do you recall?

A. Okay. Yes, the increase was that I was going to work—I worked the same amount of hours, that is right. I got a raise, that is right.

Q. You got a raise?

A. Yes.

\* \* \* \* \* \*

Q. But you were still working under the same arrangement that you had right?

A. Right.

There is sufficient evidence to establish that the wage agreement did exist between the Normans and Mr. Morales.

---

**4.** Norman alleges Jerome Cobb, Jimmy McDaniel, Mark Feather, Paul Lott, Edgar Morales, and Darryl Sheppard were under such agreements.

**5.** Mr. Lott stated he was to be paid $330 a week but this was not in issue.

As to the remaining employees,[6] the only evidence of a wage agreement was the testimony of David and India Norman. We have previously identified two factors necessary for the wage agreement to be valid: (1) an agreement and (2) a proper compensation rate. The district court simply found insufficient evidence to support the existence of any agreement based principally upon discrediting the Norman's testimony. After reviewing the entire testimony of the Normans, we believe the district court's decision to discredit their testimony not to be clearly erroneous.

■ Norman next contends the district court erroneously placed the burden of proof on them and adopted unreasonable estimates of allegedly uncompensated wages. We disagree.

It is firmly established where an employer has not kept adequate records of their employee's wages and hours as required by the FLSA, the employees will not be denied a recovery of back wages on the ground that their uncompensated work cannot be precisely determined. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Olson v. Superior Pontiac*, 765 F.2d 1570, 1578 (11th Cir.1985); *Donovan v. Grantham*, 690 F.2d 453, 458 (5th Cir.1982); *Donovan v. Hamm's Drive–Inn*, 661 F.2d 316, 318 (5th Cir.1981). The district court in determining the award to be compensated certainly has a great deal of discretion in determining the most accurate amount to be awarded. In many situations when FLSA claims are made against employers, there are inaccurate or inadequate records maintained as to each employee. Under these circumstances, the district court will look to the litigants for assistance. Brock offered the testimony and calculations of the compliance officer to assist the district court. "[I]t is for the trial judge to determine from all he has and sees the weight to be accorded the compliance officers computations ..." *Hodgson v. American Concrete Construction Co., Inc.*, 471 F.2d 1183, 1186 (6th Cir.1973). The employee, in the event an employer fails to keep accu-

rate records, need only show "he has in fact performed work for which he was improperly compensated and ... produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, at 687, 66 S.Ct. at 1192. The fact that several employees do not testify does not penalize their claim; "it is clear that each employee need not testify in order to make out a prima facie case of the number of hours worked as a matter of 'just and reasonable inference'." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982) citing *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir.1973).

In the present case, there is at most a substantial amount of conflicting evidence. The trial court had the opportunity to judge credibility of the witnesses and in doing so, discredited the testimony of the Normans. This court "does not sit to retry cases from the district court." *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973). Stanton Morgan, compliance officer, provided the court with estimates as to the hours worked of each employee and wages owed to each employee. The district court accepted these calculations for its use in determining exactly which employee was owed what amount.

We do not believe the district court erroneously placed the burden of proof on Norman and we do not believe the calculations adopted by the court for its own use to be an unreasonable estimate of the uncompensated wages.

■ Norman next contends the record does not support the findings that they coerced five employees to return their checks awarded following the consent judgment entered into on September 12, 1982 following charges brought against Norman for violations of the FLSA. We disagree.

Brock alledged five employees were coerced into returning their back wage checks: Kenneth Lott, Lula Mae Clayton, Darrell Sheppard, Joseph Upshaw and Andrew Strickland. Mr. Strickland did not

---

6. Jerome Cobb, Jimmy McDaniel, Mark Feath-  er, and Darrell Sheppard.

testify, but the other four employees did. All but Lott, testified that they wanted to donate their money to the Highlands Missionary Baptist Church where the Normans were members. Mr. Norman testified that he had been approached by the employees and told that they did not want to keep the money because they did not believe it was theirs and would rather return the money. At Mr. Norman's suggestion they agreed to donate the money to the Highlands Missionary Baptist Church.

Mr. Lott testified that he returned his money after Mr. Norman told him that the reason he was getting the silent treatment and had not received a raise was because he had not returned his check. Mr. Lott had his wife withdraw the amount of his back wage check, so he could return it to Mr. Norman. Mr. Lott was not aware that this money was going to any church.

Mr. Norman also testified that his only involvement was that of a courier. He merely delivered the money on behalf of the employees to the church. However, John W. Dean, treasurer of the Highlands Missionary Baptist Church, testified that the extent of his knowledge was that Mr. Norman brought in two donations of $5,719.68 and $2,978.05 in cash; that Mr. Norman did not specify whether he and Mrs. Norman were making the donations or anyone else.

The district court essentially heard conflicting evidence and concluded to discredit the testimony of Mr. Norman and the three employees, and accept the testimony of Mr. Lott. The district court's decision was not clearly erroneous.

Norman's final point of error is that there is no evidence to support the district court's findings of retaliatory discharges. We disagree.

■ The burden of proof is on Brock to establish a retaliatory discharge *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir.1986). Brock alledged Inez Congleton and Ben Usher were discharged for their failure to return back wage checks. The Normans testified that Ms. Congleton quit her job after a heated discussion about her job performance.

Inez Congleton stated she was called up to the Norman's offices and asked what she intended to do with the back wage check she received; her response was that she put it into her bank. Mrs. Norman then told Mrs. Congleton to go get her cash drawer from her register which she did. Mrs. Congleton turned her drawer over to Mrs. Norman, which she perceived as being fired.

Ben Usher, according to the Normans, was an independent contractor and not an employee, who was fired because of poor job performance. The district court found that Mr. Usher had been sent by the Normans to obtain a janitor's license; despite the license, Mr. Usher's work duties did not change. The trial court concluded "the acquisition of a license by Usher did not make him a contractor; he remained an employee of Norman's Country Market and continued performing the same duties." We agree. Mr. Usher stated he could not read or write, but he could sign his name, and that Mr. Norman told him to go get a license to "... scrub and wax the floor." He stated he didn't know what it meant but he was going to do it because Mr. Norman told him so. Mr. Usher stated he had a conversation with the Normans immediately following Mr. Usher's cashing of his back wage check. The Normans told him that they had lost confidence in him, that he lied and was no longer needed. The district court again made a credibility determination.

There was sufficient evidence from which the district court could have believed that a retaliatory discharge had occurred against Mrs. Congleton and Mr. Usher.

The district court's decision is, therefore, AFFIRMED except as to the claim of Mr. Edgar Morales for working in violation of an invalid wage agreement, which finding is hereby REVERSED and the Court below is ordered to amend its judgment in this respect.