**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-1203**

———————

ELAINE L. CHAO, Secretary of Labor, United
States Department of Labor,

Plaintiff - Appellee,

versus

SELF PRIDE, INCORPORATED; BARBARA A. ROBINSON,
individually and as a corporate officer of the
aforementioned corporation,

Defendants - Appellants.

———————

**No. 06-1369**

———————

ELAINE L. CHAO, Secretary of Labor, United
States Department of Labor,

Plaintiff - Appellant,

versus

SELF PRIDE, INCORPORATED; BARBARA A. ROBINSON,
individually and as a corporate officer of the
aforementioned corporation,

Defendants - Appellees.

———————

Appeals from the United States District Court for the District of
Maryland, at Baltimore.  Richard D. Bennett, District Judge.
(1:03-cv-03409-RDB)

Argued:  January 30, 2007          Decided:  May 17, 2007

Before WILKINS, Chief Judge, and NIEMEYER and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Neal Marcellas Janey, Sr., Baltimore, Maryland, for Appellants/Cross-Appellees.  Carol Beth Feinberg, Senior Attorney, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Appellee/Cross-Appellant.  **ON BRIEF:** Howard M. Radzely, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Appellee/Cross-Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Secretary of Labor commenced this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., against Self Pride, Inc., a Maryland provider of residential care for disabled persons, and its CEO, Barbara Robinson, alleging that the defendants violated the wage laws by: (1) failing to pay employees for "breaks" which were in fact compensable work under the FLSA; (2) double-penalizing tardy employees; (3) failing to pay employees when they worked, but did not call in to Self Pride's central line on an hourly basis; and (4) reducing compensable hours for other impermissible reasons or for no reason at all. The district court entered a partial summary judgment in favor of the Secretary on the issue of liability and, after a short bench trial, found that (1) the defendant's conduct was not willful and therefore the relevant statute of limitations was two years, and (2) damages for the two-year period were $527,903.63.

On Self Pride's appeal challenging liability and damages and the Secretary's cross-appeal challenging the statute of limitations determination, we affirm.

I

Self Pride is a nonprofit Maryland corporation that operates eight "community living" centers in Baltimore City. It provides 24-hour residential care for disabled residents under grants from the City and from the State of Maryland. Most of the residents are

-3-

severely mentally retarded or physically disabled and require constant care and attention, including feeding, bathing, changing diapers, bed rotation, and similar services.  In performing the care, Self Pride requires employees -- "Community Living Assistants" or CLAs -- to check on the residents every two hours around the clock, including on weekends.

Self Pride pays its CLAs on the basis of time sheets that they fill out and submit to their immediate supervisors, the "house managers."  After the house managers verify the time sheets, they submit them for approval to Adolphus Carr, Self Pride's supervisor of facilities.  Carr often makes adjustments to time sheets, usually initialing the changes, and then signs the time sheets at the bottom before submitting them to Barbara Robinson, the CEO of Self Pride.  Only with Barbara Robinson's approval of the time sheets are wages paid to employees and then on the basis of the time sheets as modified and approved.

CLAs working the weekend shift -- from 8 a.m. on Saturday to 8 a.m. on Monday -- are paid for 40 hours of work.  Even though the weekend shift is 48 hours long, the employees are not paid for two four-hour "breaks" they are given over the course of the shift.  In order to provide coverage for the necessary 24-hour care, which includes checking residents every two hours, two CLAs must be present at each facility during the entire weekend.

Following an investigation of Self Pride's wage practices by the Department of Labor, the Secretary commenced this action against Self Pride and Robinson, charging that they violated the FLSA in their manner of paying employees for the 48-hour weekend shift. The Secretary contended that the four-hour unpaid breaks given to CLAs during the weekend were still part of the paid workweek under 29 U.S.C. § 206(a), because the CLAs were not free to leave the facilities during the breaks or otherwise to use the time as they chose. The Secretary also alleged other violations of the FLSA, such as excessive docking for lateness, docking for failure to call in to Self Pride's central office, and other improper deductions from pay to penalize employees or simply avoid payment.

The district court granted the Secretary partial summary judgment on liability, concluding that "the undisputed record before this Court reveals numerous violations of the FLSA by Self Pride." The court concluded that Self Pride violated the requirements of the FLSA to pay employees overtime pay for their weekend shifts, in violation of 29 U.S.C. § 207(a)(1); that Self Pride violated the record-keeping requirements imposed by § 211(c); that the violations entitled the employees to actual and liquidated damages pursuant to § 216(b); and that Barbara Robinson, the CEO of Self Pride, was an employer as defined in § 203(a) and therefore also liable personally.

After granting the Secretary partial summary judgment on liability, the district court conducted a bench trial on (1) whether the defendants violated the FLSA "willfully," thereby extending the statute of limitations from two years to three years, see 29 U.S.C. § 255(a); and (2) the amount of damages. After finding that the defendant did not violate the statute willfully and that the two-year statute of limitations applied, the court assessed damages against Self Pride and Robinson in the amount of $527,903.63 (including liquidated damages of $155,239.72). The court also enjoined the defendants from violating the FLSA in the future.

From the judgment entered by the district court, the defendants appealed, challenging both liability and damages, and the Secretary cross-appealed, challenging the district court's determination of willfulness.

II

The defendants first contend that the district court erroneously entered a partial summary judgment on liability because the cross-affidavits of the parties created triable issues of material fact.

In support of its motion, the Secretary presented 34 affidavits of Self Pride employees in which the employees detailed Self Pride's work requirements on weekends. The affidavits also included the employees' time sheets to corroborate their testimony.

These affidavits demonstrated (1) that the employees often worked alone during weekends, when at least two were required to provide coverage for care of the residents; (2) that they were rarely able to sleep during the 48-hour shifts because of their duties; (3) that the facilities had limited or no sleeping facilities for the CLAs; (4) that their breaks were frequently interrupted; (5) that they were often unable to take their breaks; (6) that they had to check on each of the residents every two hours; (7) that they had to call Self Pride's main office line each hour or be docked pay; (8) that they could rarely if ever leave the facility during breaks; (9) that there was no practical way for them to leave the facility due to a lack of public transportation. These affidavits demonstrated in effect that the entire 48 hours of the weekend shift constituted "work" within the meaning of the FLSA, because the "break" time was corrupted by duties carried out for Self Pride's benefit, not for the employees' benefit. See Roy v. County of Lexington, 141 F.3d 533, 544 (4th Cir. 1998); 29 C.F.R. § 785.16. The employees' affidavits also demonstrated other violations involving Self Pride's improper reduction of hours recorded on time sheets.

Self Pride responded to these employee affidavits with affidavits from Barbara Robinson, the CEO of Self Pride, and from Adolphus Carr, the supervisor of the facilities. Robinson's affidavit challenged no fact specifically but stated only

-7-

conclusorily and generally that no employee worked continuously for 48 hours, because that "would be physically impossible." The schedule, she stated, consisted of two 24-hour periods, during which "each such employee was scheduled to be paid for eight hours of work, [] for a sleep period or sleep break of eight hours [and] an additional four hour break, and was given yet another break of four hours that was not compensated." Thus, she asserted, for each day of the weekend, each employee was paid for 20 hours, even though she only had to work 8.[*] Robinson's affidavit categorically denied that employees were required to call in to the main office each hour they were on duty, and stated that no employee was reduced pay for not calling in every hour. The affidavit stated also that all the employees were properly paid for overtime.

Carr's affidavit was to the same effect, and provided no additional detail.

In response to the defendants' contention that these affidavits created a material issue of fact, the district court concluded that the defendants' affidavits were simply "conclusory denials," which did not contradict the facts asserted by the employees in their affidavits, particularly the actual time sheets

---

[*]Of course, if each of two employees assigned to provide coverage on weekends had to work only 8 hours each 24-hour day, as Robinson suggested, then there were 8 hours during each 24-hour day when no one was working. Yet, the residents required round-the-clock coverage and each had to be visited at least every 2 hours. Neither Robinson in her testimony nor her counsel at oral argument was able to explain the logical inconsistency.

used by Self Pride in the course of its business.  We agree with the district court.

To successfully oppose a motion for summary judgment, a party must present admissible evidence that puts a material fact into issue.  If no reasonable jury could credit the nonmovant's evidence, the nonmovant has likewise failed to meet his burden. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  With respect to the random subtractions, double-docking for lateness, subtractions while waiting for a van to pick up residents, and docking for failing to call in, a reasonable jury would have to conclude that these violations took place.  They are readily apparent from the face of the time sheets attached to the employees' affidavits -- time sheets that were generated by the employees and approved and signed by Self Pride supervisors.  A generalized, blanket denial does not save Self Pride from summary judgment in these circumstances.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit"); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806-07 (1999) ("A party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without

explaining the contradiction or attempting to resolve the disparity").

In addition, Robinson's sworn deposition testimony confirms that the CLAs had to work during their breaks, as it was mathematically impossible for them to have provided the necessary care and also to have taken four-hour breaks. Perhaps more critically, Robinson admitted during her deposition that employees could not leave the premises during their breaks, essentially admitting that break periods were work, because they were not "periods during which an employee [was] completely relieved from duty and which [were] long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16.

The district court did not err in entering partial summary judgment on liability in favor of the Secretary.

### III

The defendants next challenge the damage award entered by the district court. They argue that the Secretary failed to create a "just and reasonable inference" of damages, because the Secretary relied on paper records, rather than calling the employees as witnesses to testify to the amount of time worked, and the paper records were insufficient to support the district court's finding of damages. In addition, the defendants claim that the court erred in assuming that the illegal deductions made on the representative

plaintiffs' time sheets were also to be applied to the other employees' time sheets.

In this case, many time sheets were missing and the Secretary undertook various methods to interpolate damages based on the records that were available. In these circumstances, the Secretary has only to show damages as a matter of "just and reasonable inference," after which the burden shifts to Self Pride to show that those damages were not suffered. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1957), superseded by statute on other grounds, 29 U.S.C. § 254 et seq.

To prove damages in this case, the Secretary reviewed every available time sheet and payroll record. Because records were incomplete and many time sheets were missing, the Secretary often used statistical inferences to reconstruct the amount of time worked for which the employee was not paid. Thus, if a time sheet was available, damages were assessed based on the actual number of violations present. If an employee had more than 30% of her time sheets available, the Secretary used those time sheets to determine how many hours, on average, were improperly deducted from her time worked. That per-time sheet average was then imputed to all the time sheets missing for that particular employee. For employees without sufficient time sheets to create an individual average, the Secretary used a "universal average" -- the average amount of time improperly deducted from all of the time sheets. The missing time

-11-

sheets were then assumed to be in line with the universal average. Thus, the Secretary made efforts to minimize the use of representative data in the damages determination, perhaps even more than necessary, and attempted to calculate damages on each individual basis, relying on records for every employee working at Self Pride during the relevant period.

Because the Secretary relied on the best evidence available -- the available time records -- we cannot agree with the defendants that she also had to call each employee to the witness stand in an effort to obtain the employee's best recollection of work over a period of two years. Such evidence would have contributed little, if anything. Moreover, the FLSA imposes no requirement that the Secretary call each individual employee and attempt to reconstruct, from recollection, the time worked in the absence of time records. See Reich v. Gateway Press, Inc., 13 F.3d 685, 688 (3d Cir. 1994); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962 (6th Cir. 1991); Brock v. Norman's Country Market, Inc., 835 F.2d 823, 828 (11th Cir. 1988). In this case, the documentary evidence, if not the only evidence available, was certainly the most reliable evidence of damages. Furthermore, "To support an award for back wages, the Secretary is not required to identify with specificity each and every employee who was undercompensated and for exactly what time period." Martin v. Deiriggi, 985 F.2d 129, 132 (4th Cir. 1992).

While we agree that there probably were imperfections in the calculation of damages, particularly when so many records were missing, and we recognize that there may have been minor inaccuracies in the Secretary's determination of a "universal average," the defendant did not point out any of these flaws and preserve them for review on appeal. The damages ultimately became a question of fact within the district court's factfinding authority. See Mt. Clemens, 328 U.S. at 687-88. We are satisfied that the Secretary's proof was sufficient to justify the district court's findings and that the findings were not clearly erroneous. Accordingly, we also affirm the district court's damage award.

IV

The Secretary cross-appeals the district court's finding that the defendants' violations of the FLSA were not willful and therefore that only the two-year -- as distinct from the three-year -- statute of limitations applied. See 29 U.S.C. § 255(a).

The evidence at trial showed that an investigator from the Department of Labor arrived at Self Pride in August 1998 and on September 30, 1998, told Barbara and Jerome Robinson that Self Pride's policy on paying for breaks violated the FLSA. At that time, Barbara and Jerome Robinson expressed disagreement with the investigator's conclusion, stating that they believed that the breaks need not be paid. There was a follow-up call, seven months later, to the same effect. At no point did the investigator

discuss which provisions of law might have been violated, nor did he provide any examples of violations. The investigator also did not explain how the violations he was claiming might have been corrected. Self Pride had no further dealings with the Department of Labor until another investigator arrived some two and one-half years later, in September 2001, leading to the claims in this case.

The district court found as a matter of fact that the Secretary had failed to demonstrate that the defendants had <u>notice</u> of the requirements of the FLSA at the time of the alleged violations. In the district court's view, such notice was a prerequisite to finding of either a reckless disregard of a violation or a knowing violation of the FLSA. <u>See</u> <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133, 135 n.13 (1988) (noting that the defendant's conduct can be found "willful" if (1) the defendant is reckless or deliberate with regard to whether its conduct complies with known provisions of the FLSA, or (2) the defendant is reckless or deliberate with regard to determining its obligations under the FLSA).

We read the recklessness requirement as the district court did -- as requiring notice, actual or constructive -- of the existence and general requirements of the FLSA. We would be able to conclude that notice was given constructively if Self Pride had been reckless or deliberate in failing to learn of its legal obligations. But <u>only</u> with such notice, actual or constructive,

-14-

could a defendant form the willful mental state, either by choosing to remain ignorant of legal requirements or by learning of those requirements and disobeying them.  See Dole v. Elliott Travel & Tours, 942 F.2d at 966-67 (6th Cir. 1991).  In Richland Shoe, the Supreme Court rejected a circuit court doctrine that held conduct willful whenever the FLSA "was in the picture," Coleman v. Jiffy June Farms, Inc., 458 F.2d 1139 (5th Cir. 1971), instructing us to look for an actually malignant -- not merely careless -- mental state.

With this standard and on this record, we find no clear error. The district court could have fairly concluded that Self Pride and the Robinsons had a good-faith disagreement with the Department of Labor about their legal obligations; or that they reasonably interpreted the investigator's departure and absence for several years as a sign that their practices were legal; or that Self Pride and the Robinsons, though neglectful in learning their legal obligations, were nonetheless not reckless in their failure.  Thus, on this issue we also affirm the district court.

Accordingly, the judgment of the district court is

AFFIRMED.