Marvin P. JONES, M.D., Plaintiff,

v.

**WESTSIDE–URBAN HEALTH CENTER, INC., Curtis W. Cooper, individually and as Executive Director, and William J. Milton, individually and as Medical Director, Defendants.**

Civ. A. No. 490–229.

United States District Court,
S.D. Georgia,
Savannah Division.

April 8, 1991.

---

Gregory G. Johnson, East Orange, N.J., Gregory V. Sapp, Savannah, Ga., Charles R. Floyd, Jr., Atlanta, Ga., for plaintiff.

Malcolm R. Maclean, and Wade W. Herring, II, Savannah, Ga., for defendants.

## ORDER

ALAIMO, District Judge.

This is a discrimination suit filed pursuant to the Equal Pay Act of 1963, 29 U.S.C. §§ 206 and 215(a)(3). Plaintiff, a male physician, claims that because of his sex he was paid less money than a female physician. Plaintiff also claims that he was wrongly terminated from his job in retaliation for complaining about the unequal wages. Defendants contend that the female physician received a higher salary only because of her superior level of education and her vast prior work experience. Defendants further allege that plaintiff was fired for excessive absenteeism and that his wage protests were irrelevant to the decision to terminate him.

This case is presently before the Court on defendants' motion for summary judgment, plaintiff's cross-motion for summary judgment and defendants' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. As discussed below, all three motions must be denied.

## FACTS

The Court begins by recounting those facts which are undisputed. Defendant, Westside–Urban Health Center, Inc. ("Westside"), is a federally supported health care organization located in Savannah, Georgia. Plaintiff, Dr. Marvin P. Jones, was a participant in the National Health Service Corps Scholarship program in which he agreed to work at a selected medical site, such as Westside, from July 1987 until July 1991 in exchange for the government forgiving all of his loan obligations. Westside hired Jones on July 8, 1987, as a staff physician in internal medicine. When Jones was hired, he had just completed his residency program and was not certified by the American Board of Internal Medicine. To determine the starting salaries of all physicians, Westside uses a written compensation plan. Under the plan, Jones received $54,485.89 annual compensation. In October of 1989, Jones' supervisor, Dr. William Milton, evaluated his performance. Milton described Jones as an excellent physician who was an asset to Westside.

Westside hired Dr. Greer Larned, a female pediatrician, in 1986 as a staff physician. Larned came to Westside with 12 years of experience as a practicing pediatrician. In addition, she was certified by the American Board of Pediatrics. Prior to her employment with Westside, she earned $69,500 a year. Under Westside's compensation plan, her starting salary was $59,538.20.

As staff physicians, both Jones and Larned had the same job description and each was required to have the same minimum qualifications. The Westside position description bulletin specifies that each staff physician must be a graduate of a medical school of recognized standing who has served for one year as an intern in a recognized general hospital and has obtained a license to practice medicine in the State of Georgia. Although Jones and Larned had different specialties, each treated patients—occasionally treating each other's patients—and performed hospital visitation duties.

In April 1990, Jones became aware that Larned was receiving a higher salary than he was. As of that time, Jones received $57,802 annually, and Larned received $66,319 annually. Jones complained about the discrepancy to Drs. William Milton and Curtis Cooper, his supervisors. Cooper

maintained that Larned's superior experience and education justified the salary discrepancy. Jones requested a grievance hearing concerning the salary dispute. The request was denied and five days later, on June 8, 1990, Jones was fired.

Several facts are vehemently contested. Jones contends that, in April of 1989, Dr. Milton made him a Medical Director with supervisory responsibilities over all medical staff, including Larned. Jones further contends that he had more patient encounters than Larned did and generated more revenue for Westside than she did. Defendants acknowledge that Jones had the authority to approve leave requests for the medical staff, including Larned, but deny that Jones was ever made a Medical Director. Defendants argue that the only reason Jones was given the additional duties of approving leave requests was to make *him* more aware of the impact of absences, thereby, perhaps, causing him to improve his own poor attendance record.

The parties hotly dispute Jones' attendance record. Defendants argue that Jones was fired due to his excessive absences from work. Jones argues that he had a better attendance record than Larned did, and also contends that his time sheets have been altered to make it appear that he missed more work than he actually did. Westside's bookkeeper, Alyce Martin, stated that Jones' time sheets do appear to have been altered in some way. These material factual discrepancies make summary judgment improper.

DISCUSSION

I. *Summary Judgment Standard*

In order to succeed on a motion for summary judgment, the movant must show that there are no genuine issues of material fact, so that a judgment can be rendered in the movant's favor as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A party seeking summary judgment bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). The evidence and any inferences that may be drawn from it should be viewed in the light most favorable to the non-movant. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985). Moreover, a court must proceed with caution when disposing of an employment discrimination case by summary judgment, given the heavily factual nature of the cause of action. *Robertson v. Georgia Dep't of Corrections*, 725 F.Supp. 533, 535 (S.D.Ga. 1989). In the present case, summary judgment is inappropriate, for several questions of material fact remain in dispute.

II. *Equal Pay Act*

In order to establish a *prima facie* case under the Equal Pay Act, a plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974), quoting Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1); *see also Schwartz v. Florida Board of Regents*, 807 F.2d 901, 907 (11th Cir.1987); *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032 (11th Cir.1985). The jobs held by the employees of opposite sexes need not be identical; rather, they need only be substantially equal. *Corning Glass Works*, 417 U.S. at 203–04, 94 S.Ct. at 2232–33. A plaintiff establishes a *prima facie* case by comparing the jobs held by the female and male employees and showing that those jobs are substantially equal, not by comparing the skills and qualifications of the individual employees holding those jobs. *Brock*, 765 F.2d at 1032; *Hein v. Oregon College of Educ.*, 718 F.2d 910, 914 (9th Cir.1983). Because at this stage the jobs and not the employees are compared, only the skills and qualifications actually needed to perform the jobs are considered. The inquiry focuses on the primary duties of each job, not those which are incidental or insubstantial. Any extra duties that might be used to distinguish two jobs may not be tasks that are typically performed by other per-

sonnel at lower pay. *Goodrich v. International Brotherhood of Electrical Workers*, 815 F.2d 1519, 1524 (D.C.Cir.1987).

■ In the present case, plaintiff has established a *prima facie* case under the Equal Pay Act. First, plaintiff has established that he makes less money than Larned, a female physician. Second, he has shown that both he and Larned are staff physicians. As Westside's job description bulletin makes clear, the skills and qualifications necessary for each of them to obtain the position of staff physician are identical. Both doctors had to have completed an internship and obtained a medical degree and a license to practice medicine in the State of Georgia. Both were responsible for patient treatment and hospital visitations. They even treated the same patients occasionally. Thus, plaintiff has met his burden of proving that Westside paid different wages to him and Larned for equal work on substantially equal jobs.

■ In arguing that plaintiff failed to establish a *prima facie* case, defendants rely on the facts that Larned is more experienced than Jones and Larned alone is board certified. Such an argument exhibits a misunderstanding of the pleading burdens and elements of a *prima facie* case in an Equal Pay Act claim.[1] It is a basic and fundamental principle of Equal Pay Act claims that a plaintiff establishes a *prima facie* case by comparing the *jobs* held by the female and male employees and showing that those jobs are substantially equal, not by comparing the skills and qualifications of the individual employees holding those jobs.[2]

■ Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show that the wage differential is justified under one of the Equal Pay Act's four exceptions. It is at this stage that individual skills and qualifications become relevant. The Act provides that unequal pay to members of the opposite sex is permitted when the inequality arises "pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229 quoting 29 U.S.C. § 206(d); *see also E.E.O.C. v. White and Sons Enter.*, 881 F.2d 1006, 1010 (11th Cir.1989). The burden of proof and the burden of persuasion remains on the defendant to justify the wage differential. *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir.1983).

At issue in the present case is the fourth exception—"any other factor other than sex." Defendants properly (this time) point to the fact that Larned had 12 years of experience before coming to Westside, while Jones had none. Furthermore, Larned is certified by the American Board of Pediatrics, while Jones has no Board certification. Factors such as experience, education and seniority are factors other than sex which can be a valid basis for a wage differential, even when the work is found to be equal. However, the employer must demonstrate the relevance of factors such as education and experience. *Thompson v. John L. Williams Co., Inc.*, 686 F.Supp. 315, 320 (M.D.Ga.1988); *see, e.g., Soble v. University of Maryland*, 778 F.2d 164, 167 (4th Cir.1985) (employer succeeded in establishing relevance of advanced degrees held by university professor). In the present case, defendants adequately demonstrated the relevance of experience and board certification to the *initial* salary determinations. Plaintiff, who tried but failed to become Board certified, admitted

---

**1.** Ironically, in defendants' motion for sanctions against Jones and his attorney, defendants condescendingly speculate that "the possibility exists, of course, that Jones and his lawyer simply do not understand the law." Suffice it to say that it is usually a good policy to familiarize oneself with the law before accusing others of ignorance.

**2.** Defendants apparently contend that a staff physician with 12 years' experience has a substantially different job than a staff physician with no experience. Experience may distinguish their *individual skills* as staff physicians, but experience will not change the fact that they are both staff physicians. This is particularly true in the present case where Westside does not use the phrase "staff physician" as a hollow label. Instead, Westside explicitly defined the position of staff physician and stated the minimum qualifications needed for the job.

that Board certification "completes your training" and "enhances or insures your ability."

◼ However, the burden of proving that a factor other than sex is the basis for a wage differential is a heavy one which is only met if the employer proves that sex played absolutely *no role* in any salary determinations. *Bullock v. Pizza Hut, Inc.,* 429 F.Supp. 424, 429 (M.D.La.1977); *Futran v. Ring Radio Co.,* 501 F.Supp. 734, 738 (N.D.Ga.1980). In the present case, plaintiff has presented enough facts to create a material dispute as to whether Jones' sex played *no role* in the decision to continue to pay him less than Larned. It is uncontested that plaintiff's superiors described him as an "outstanding physician" whose performance made him an "asset to Westside." Although his assertions are contested, plaintiff further alleges that he acted as a Medical Director at Westside, that he supervised Larned, that he approved her leave requests, that he treated more patients and generated more revenue for Westside than Larned did and that he had a better attendance record than Larned did. Absent a resolution of these factual disputes, the Court cannot hold that defendants met their burden of persuading a fact finder that sex played no role in continuing to pay Jones less than Larned.

The case of *Bullock v. Pizza Hut, Inc.,* 429 F.Supp. 424 (M.D.La.1977), is particularly instructive. In *Bullock,* a female manager was paid less than a male manager. The defendant justified the wage difference by explaining that the male had a superior educational background. However, the plaintiff argued that she surpassed her male colleague in terms of performance and profitability. Following a bench trial, the court found that a superior educational background could justify an initial wage discrepancy but "in light of plaintiff's repeated high performance in profitability it cannot provide justification for her wage differential during the entire period...." *Id.* at 430.

Assuming plaintiff's allegations of superior performance and responsibility are true, defendants have not yet satisfied their burden of showing that sex played no role in continuing to pay Jones less than Larned. Presumably, defendants initially hired Larned at a higher rate of pay because, in their informed judgment, they assumed that experience and education would make her perform at a higher level than a less-educated novice. Defendants have offered no explanation for clinging to a salary discrepancy when their underlying assumption has been proved, as plaintiff alleges, grossly incorrect.[3]

To conclude, the Court is not holding that sex discrimination played a factor in Westside's salary determination. The Court is only holding that defendants have not yet met their burden of persuading a fact finder that sex played no role. The Court simply cannot dispose of such a fact-specific and fact-contested claim at such an early stage in the litigation. Questions of material fact make summary judgment in favor of either party premature.

◼ Similarly, summary judgment on plaintiff's retaliation claim is inappropriate. Plaintiff contends that he was terminated and suffered a loss of benefits in retaliation for his opposition to unequal wages. It is unlawful for an employer to discharge or in any other manner discriminate against any employee because such employee has filed any complaint alleging a violation of the Equal Pay Act. 29 U.S.C. § 215(a)(3). To make out a *prima facie* case of retaliation, plaintiff must prove (1) that there was a statutorily protected activity, (2) that an adverse employment action occurred, and (3) that there was a causal link between the activity and the adverse employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973) (applying the standard to Title VII of the Civil Rights Act of 1964); *Pedreyra v. Cornell Prescription Pharmacies, Inc.,* 465 F.Supp. 936, 947–48 (D.Colo.1979) (ap-

---

**3.** Defendants stress that other male physicians have been hired at the same rate of pay applied to Jones. The Court fails to see how defendants' case is helped by showing that not just one male but, rather, three males were paid less than Larned was.

plying the *McDonnell Douglas* formulation to retaliation claims under the Equal Pay Act).

■ In the present case, plaintiff has established a *prima facie* case of retaliatory discharge. First, lodging a complaint with his employer and requesting a grievance hearing were statutorily protected activities. The Eleventh Circuit in *E.E.O.C. v. White and Sons Enter.*, 881 F.2d 1006, 1011 (11th Cir.1989), concluded that unofficial complaints by employees to their employer about unequal pay constitute assertions of protected rights. Second, the decisions to fire plaintiff and deprive him of certain benefits were certainly adverse decisions. Finally, plaintiff has shown that he was fired just five days after his request for a grievance hearing was denied. Accordingly, plaintiff has provided enough evidence from which a fact finder could infer that the complaints caused the termination, for the termination followed so closely on the heels of the complaint.

■ Defendants seek to rebut the *prima facie* case by offering a legitimate, nondiscriminatory reason for discharging plaintiff. Defendants contend that plaintiff was fired because he simply refused to work at his current level of compensation. They have offered evidence showing that plaintiff had a severe absenteeism problem. However, plaintiff contends that he had an excellent attendance record—one superior to that of Larned. Plaintiff shows that, at the end of 1988, he had accumulated 43.58 hours of vacation leave and 38 hours of sick leave and, at the end of 1989, had accumulated 95 hours of vacation leave and 71 hours of sick leave. Further, plaintiff alleges that some of his 1990 time sheets have been altered to make it appear that he took more leave than he actually did. Westside's bookkeeper, Alyce Martin, stated that the time sheets do appear to have been altered in some way, although the parties dispute whether the alteration was legitimate.[4] Because of the disputed issues of fact surrounding defendants' motives in firing plaintiff, summary judgment must be denied.

### III. *Rule 11*

Rule 11 of the Federal Rules of Civil Procedure requires a district court to sanction attorneys and the parties they represent when they prosecute baseless claims or file frivolous pleadings. *See* Fed.R. Civ.P. 11. The primary purpose of Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987) (quoting Fed.R. Civ.P. 11, Advisory Committee Note). However, the drafters did not intend to deter innovative claims nor chill vigorous advocacy that may bring about positive changes in the law. *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir.1990).

■ The Eleventh Circuit has held that three types of conduct warrant the imposition of Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading for an improper purpose. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir.1991). In the present case, defendants contend that plaintiff and his lawyer have committed all three types of prohibited acts. The Court must disagree.

■ As illustrated by the above discussion of the underlying facts of this case and the applicable law, the suit is well grounded in fact and warranted by existing law. The facts brought forth by plaintiff and his attorney were in most instances corroborated by documentary and testimonial evidence. Furthermore, plaintiff's complaint, motions and briefs exhibit a sol-

---

**4.** Defendants urge the Court to disregard plaintiff's affidavit in which he states that his time records have been altered. According to the defendants, the Court should ignore the affidavit because it does not bear a seal of a Georgia Notary Public. However, even if the Court were to disregard plaintiff's affidavit, summary judgment would still be inappropriate, for the time sheets themselves, as well as the testimony of Alyce Martin create a genuine issue of material fact regarding plaintiff's attendance.

id understanding of the laws surrounding the Equal Pay Act and a plausible application of those laws to this case. Likewise, the Court must disagree with defendants' assertion that plaintiff filed this suit for an improper purpose. Defendants conclude that plaintiff does not really care about his sex discrimination claim. Plaintiff was terminated one year before fulfillment of his obligation to serve four years at Westside. Defendants speculate, therefore, that "Jones brought this suit in an effort to shift his National Health Services Corps obligation to Westside and the other defendants." Plaintiff's claim for damages belies such speculation. Even if plaintiff desires to somehow avoid his final year of service at Westside, this would not change the fact that he has filed a proper suit seeking monetary redress for what he alleges to be discriminatory treatment. By way of analogy, if a plaintiff were injured in a car accident and sued the driver of the other vehicle for injuries, his complaint would be proper so long as it was well grounded in fact and warranted by existing law. His purpose in filing the suit would not be improper simply because the plaintiff disclosed that he planned to use his recovery to purchase a house.

The Court notes, however, that the briefs, motions and other papers filed in this case appear to reveal a heightened sense of acrimony between counsel. *All* attorneys are cautioned to remember their dual roles; not only must they be zealous advocates for their clients, but they also must behave as officers of the court. While denying the present motion for sanctions pursuant to Rule 11, the Court certainly will not foreclose its duty to continue to monitor the conduct of all counsel and parties, nor will the Court ignore its duty to entertain a future motion for sanctions if subsequent developments support one.

CONCLUSION

Factual disputes surround plaintiff's claims under the Equal Pay Act. Accordingly, defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment are DENIED. The Court finds that plaintiff's claims have an adequate factual base and are well grounded in existing law. Furthermore, the Court finds that plaintiff asserted his claims for a proper purpose. Therefore, defendants' motion for sanctions pursuant to Rule 11 is DENIED.

SO ORDERED.