**Mary Dale WRIGHT, Plaintiff,**

v.

**RAYONIER, INC., Defendant.**

**Civil Action No. CV296–181.**

United States District Court,
S.D. Georgia,
Brunswick Division.

July 16, 1997.

William Pierce Franklin, Jr., Timothy David Roberts, Oliver, Maner & Gray, Savannah, GA, for plaintiff.

Donna Linn Crossland, Fendig, McLemore, Taylor & Whitworth, Brunswick, GA, Guy O. Farmer, II, Melissa O. Hanson, Foley & Lardner, Jacksonville, FL, for defendant.

### *ORDER*

ALAIMO, District Judge.

Plaintiff, Mary Dale Wright ("Wright"), brings this action against Defendant, Rayonier, Inc. ("Rayonier"), alleging that Rayonier failed to pay her overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and that Rayonier paid her lower wages than a male counterpart in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1). Specifically, Wright claims that she improperly was classified as an "exempt" employee who was not entitled to overtime compensation under the FLSA and also that she was paid a lower salary than the male worker whose position she assumed when he retired. Rayonier filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which will be **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth below.

### *FACTS*

Rayonier is engaged in the manufacture of specialty pulps. The manufacturing process, in simplified terms, entails two basic steps. First, de-barked trees are chipped into wafer like pieces. Second, the chips are cooked, chemically bleached, formed into sheets, and dried to form pulp. The workforce at Rayo-

**1476**

nier includes, *inter alia*, Scalers who weigh loads of pulpwood and woodchips that are brought into the mill either by truck or by train.

Richard Moore ("Moore"), a Rayonier employee, worked as a Scaler beginning in September, 1956, after which he was promoted to the position of Lead Scaler in December, 1985. In that capacity, Moore was responsible for oversight of the scaling operation. As a Lead Scaler, Moore's salary increased from $22,245 to $26,245 over approximately a three year period. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 4 at 2.) In January, 1988, Moore's position was upgraded to include additional job duties that required him to act as a Relief Woodyard Supervisor, and was renamed Woodyard Supervisor. (Zane Wasden ("Wasden") Dep. at 13.) The Woodyard Supervisor position was graded as a (Rev.8/82) Grade 12,[1] and Moore was classified as an "exempt" employee who earned a salary but did not receive overtime compensation. (Rikard Dep. at 23.) In this position, Moore's salary initially was $36,000 and was increased to $42,290 by the time of his retirement in January, 1993. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 4 at 2.)

Upon Moore's retirement, it was discovered that Moore, in fact, had not performed any of the responsibilities of a Relief Woodyard Supervisor. (Rikard Aff. ¶ 5; Wright Dep. at 40.) The position was reviewed, and a new job description was written. (Def. Rayonier, Inc.'s S. of Material Facts to Which No Genuine Issue Exist and Conclusions of Law in Supp. of Its Mot. for Summ. J. ¶ 6 (hereinafter "Def.'s S. of Material Facts."))[2] The job description was changed to omit responsibilities to act as a Relief Woodyard Supervisor. (*Id.*) Also, the position was renamed Lead Scaler, and was reclassified as a Grade 10.

Wright has worked continuously for Rayonier since July 5, 1978, during which time she has held various positions. Wright worked primarily as a Scaler beginning in 1986.

During her tenure as a Scaler, Wright substituted for Moore whenever he was absent from the job. (Id.¶ 9.) Wright performed various duties when she filled in for Moore, including inventory of the woodyard, weighing trucks and trains, approving bills of demurrage, ordering supplies, upkeep of the scales, supervising the Scalers, and scheduling the Scalers. (Wright Dep. at 26–30.)

In April, 1993, Wright was promoted to the Lead Scaler position upon Moore's retirement. Due to Wright's promotion, her employee status changed from non-exempt to exempt and, thus, she received a fixed salary, but no longer received overtime compensation. (Rikard Aff. ¶ 6.) Wright's salary increased 23.7% to $34,715 when she was promoted. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 4 at 2.)

In her capacity as Lead Scaler, Wright performed many of the same duties as when she substituted for Moore, including weighing trains, completing inventories, scheduling and supervising the Scalers, ordering supplies, and maintaining the scales. (Wright Dep. at 80, 107.) In addition, Wright kept track of the Scalers' vacations, heard their complaints, and conducted annual performance reviews. (*Id.* at 80.) Wright also had the authority to discipline the Scalers, but no occasion arose in which discipline was necessary. (*Id.* at 83.) During the time period relevant to the case at bar, three Scalers worked with Wright, whereas five to seven Scalers had worked with Moore. (*id.* at 38–39, 78.) Consequently, Wright worked more hours than Moore to cover shifts. (Wright Aff. ¶ 7.)

Wright lodged complaints with her superiors that she was dissatisfied with her compensation in that she no longer received overtime pay, which resulted in the Scalers earning more money than she. (Wright Aff. ¶ 10.) She first complained to Paul Harrell ("Harrell"), a production manager, shortly after she was promoted to Lead Scaler, and

---

1. Rayonier utilizes a grading system to classify employees. Based upon the job description for a particular position, several factors are considered to determine the appropriate grade, including the level of education and prior experience required, the degree to which the position requires independent judgment, the complexity of

the work, and whether supervision of other employees is required. (Lee Rikard ("Rikard") Dep. at 22.)

2. Only those facts included in Rayonier's Statement of Material Facts to which Wright admits are included in this Order.

told Harrell that she would rather be a Scaler. (Wright Dep. at 43–44.) Harrell responded that no Scaler positions were available. (*Id.* at 44.) Also, in 1993, Wright expressed her concerns to Wasden, who was a Woodyard Superintendent at that time. (*Id.* at 45–46.) Wasden consulted with Rikard, after which Wasden related to Wright a message from Rikard that her pay was in line with her position. (*Id.* at 46; Rikard Aff. ¶ 11.) Wright then complained in March, 1995, to Randy Deal ("Deal"), the Woodyard Superintendent who replaced Wasden. (Wright Dep. at 48–49.) In response to her complaint, Deal arranged a meeting with Mike Burch ("Burch"), a production manager. (*Id.* at 48–49.) Wright presented Deal with pay records, which showed that the Scalers made more money than she, and Deal then showed those records to Rikard. (*Id.* at 49–50.) At that time, Rikard gave Wright a copy of her current job description and asked her to review it and to note any inaccuracies, which Wright did. (Wright Aff. ¶ 8, Ex. A; Rikard Aff. ¶ 11.) On May 11, 1995, Wright filed an EEOC complaint, which alleged that she was the victim of gender discrimination in that she received lower pay than had Moore. Thereafter, in July, 1995, Rikard reviewed the Lead Scaler position. (Rikard Aff. ¶ 11.) On July 20, 1995, the Lead Scaler job description was changed to omit any supervisory duties, and Wright's status was changed to non-exempt. (*Id.*)

Since July 20, 1995, Wright has received overtime compensation. Wright no longer approves the Scalers' time cards nor evaluates their job performances. (Wright Dep. at 105, 108.) Wright continues to perform many of the same job duties as when she was classified as exempt, including weighing loads of woodchips, maintaining the scales, and ordering supplies. (*Id.* at 107.)

## DISCUSSION

### I. Summary Judgment

Rayonier has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c); *Lordmann Enterprises, Inc. v. Equicor.Inc.* 32 F.3d 1529,

1532 (11th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial" *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.* 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

### II. Overtime Compensation Under the FLSA

Wright contends that she is entitled to receive overtime compensation for the hours that she worked in excess of forty hours per week in her capacity as a Lead Scaler between April, 1993, to June, 1995. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9.) Rayonier, however, contends that Wright is not entitled to receive overtime compensation because she held an "executive" position. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 9.) Wright counters that she was not employed in an executive capacity. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 9–10.)

The FLSA provides that employees who work in excess of forty hours per week must receive compensation at a rate of not less than one and one-half times the regular rate of pay. § 207(a)(1). The FLSA also provides an exemption, which provides that § 207(a)(1) does not apply to "any employee employed in a bona fide executive ... capaci-

ty...." § 213(a)(1). Executive employees, therefore, are not entitled to receive overtime compensation.

■■■ Two tests are utilized to determine whether the executive exemption applies, a "long test" and a "short test." *See* 29 C.F.R. § 541.1 (1996). The short test is used when an employee makes more than $250 per week.[3] § 541.1(f). Under the short test, the executive exemption applies if two requirements are satisfied: (1) the employee's *primary duty* consists of the *management* of the enterprise or a department thereof, and (2) the employee customarily and regularly directs the work of two or more other employees. *Id.,* The burden of proof is on the employer to show that the executive exemption applies. *Brock v. Norman's Country Mkt., Inc.,* 835 F.2d 823, 826 (11th Cir.1988), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988). The executive exemption applies only to those employees who fall clearly and unmistakably within its terms and spirit. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 1101 (1945); *Nicholson v. World Business Network, Inc.,* 105 F.3d 1361, 1364 (11th Cir.1997).

It is undisputed that Wright was paid in excess of $250 per week[4] and, thus, use of the short test is proper.[5] It is also undisputed that, during the time period relevant to the instant case, Wright worked with three Scalers. Accordingly, the second prong of the short test is satisfied and, therefore, only the first prong warrants discussion.

■■■ Wright contends that her duties as a Lead Scaler were " 'clearly non-executive' " and that her "duties which [were] not identical to tasks being performed by scalers are easily attributable to routine, fundamental tasks." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10.) Rayonier, conversely, argues that Wright performed many duties that are considered "managerial" under the FLSA regulations. (*See* Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 8–9.) The relevant inquiry, thus, is whether Wright was engaged in "management" of the Scalers.

Indicia of "management" include [i]nterviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work, directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials [and] supplies ... to be used

---

3. The text of § 541.1, in relevant part, provides, [t]he term employee employed in a bona fide executive * * * capacity ... shall mean any employee:
   (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
   (b) Who customarily and regularly directs the work of two or more other employees therein; and
   (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
   (d) Who customarily and regularly exercises discretionary powers; and
   (e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section ...; and

   (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ...: Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all requirements of this section.
   § 541.1 (italics in original omitted).

4. Wright earned $667 to $715 weekly from 1993 to 1995. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 7.)

5. Wright's reliance on elements of the long test, which allegedly weigh in her favor, is misplaced. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 11–12.) If the short test is applicable, then the long test need not be considered. *Brock,* 835 F.2d at 826; *Sturm v. TOC Retail, Inc.,* 864 F.Supp. 1346, 1352 (M.D.Ga.1994).

...; controlling the flow and distribution of materials ...; [and] providing for the safety of the [employees] and the property. 29 C.F.R. § 541.102(b). Rayonier correctly points out that Wright performed several of the activities listed as examples of managerial work. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 8.) For example, Wright scheduled the Scalers, completed employee evaluations, and ordered supplies for the scale house. Wright contends that although she performed some of those functions, she spent the majority of her time performing the same functions as the Scalers. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 10; Wright Dep. at 69–70.)

It is not enough, though, to show that Wright engaged in management. To carry its burden of proof, Rayonier also must show that management was Wright's "primary duty." As with the term "management," the regulations offer some guidance on what constitutes an employee's primary duty.

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case.... In the ordinary case, it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time, alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

29 C.F.R. § 541.103 (1996).

Wright contends that she spent only fifteen percent of her time supervising the Scalers, while she spent seventy-two percent of her time inspecting the wood, calculating the wood inventory, and processing rail shipments of wood, which are the same job duties that the Scalers perform. (Wright Aff. ¶ 8; Wright Dep. at 27; *see also* Wright Dep. at 82.) The Scalers, however, earned more money than Wright. (Wright Dep. at 59–61.)

In light of the evidence concerning the similarity of Wright's job duties with those of the Scalers, in addition to the comparison of Wright's pay to that of the Scalers, the Court is persuaded that a genuine issue of material fact exists whether Wright's primary duty was management. The amount of time that Wright spent engaged in duties associated with management is disputed, as is the relative importance of those duties in comparison with other duties. Accordingly, the Court will deny the portion of Rayonier's Motion for Summary Judgment that seeks the dismissal of Wright's FLSA claim.

### III. *FLSA Statute of Limitations*

■ The FLSA generally provides for a two year statute of limitations, but provides for a three year statute of limitations where there is a "willful" violation of the Act.[6] 29 U.S.C. § 255(a). The parties dispute which limitations period is applicable. Wright, of course, claims that Rayonier's alleged violations of the FLSA were willful and, accordingly, seeks to recover overtime compensation for the time period between April 23, 1993, the date she was promoted to Lead Scaler and re-classified as exempt, and July 16, 1995, the date on which she again began to receive overtime compensation. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13.) Rayonier, conversely, contends that any alleged FLSA violations were not willful and, thus, the two year period applies. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 8.)

■ The standard for determining whether a violation is willful is well-settled. A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [Act]." *McLaughlin v. Richland Shoe*

---

**6.** Wright filed the instant action on November 4, 1996.

*Co.* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115, 123 (1988); *Reich v. Department of Conservation and Natural Resources,* 28 F.3d 1076, 1084 (11th Cir.1994).

In support of her contention that Rayonier's alleged violations were willful, Wright points to Rikard's failure to investigate her pay concerns until after she filed the EEOC complaint, despite her numerous complaints. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13.) Rayonier argues that Rikard did not take any action in 1993 when he first learned of Wright's complaints because many supervisors complained that they earned less compensation than their subordinates. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 17; Rikard Aff. ¶ 10.) Rayonier further argues that it took reasonable steps in classifying the Lead Scaler position after Moore's retirement. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 16–17.)

The Court finds that a genuine issue of material fact exists whether Rayonier's alleged violations were willful. Although Wright voiced her concerns shortly after she was promoted, no action was taken until approximately two years later. More telling is the fact that after reviewing Wright's job description, her status was changed to non-exempt. Rayonier argues that its re-classification of the Lead Scaler position was not "legally required" and "does not lead to the conclusion that it violated [Wright's] rights under the FLSA...." (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J at 6 n. 3.) While conceding that the change in Wright's status does not dictate the conclusion that Rayonier violated the FLSA, it does create a genuine issue of fact whether the alleged violations were willful.

Wright's job duties over the course of the two year period from April, 1993, to July, 1995, remained fairly constant. Furthermore, Wright contends that her current job duties are basically the same as when she was classified as exempt. Although Wright's "supervisory duties" were removed from her job description, the evidence presented shows that the only duties that Wright no longer performs include conducting performance reviews and approving timecards. The changes in Wright's duties, therefore, are minor. The consistency of Wright's duties, coupled with the failure of Rayonier

to act on Wright's complaints, preclude a finding that Rayonier's alleged violations were not willful. A juror reasonably could infer that Rayonier acted with reckless disregard. Accordingly, Rayonier's Motion for Summary Judgment on the issue of the applicability of the FLSA's two year statute of limitations will be denied.

## IV. *Equal Pay Act*

Wright contends that Rayonier discriminated against her on the basis of her gender by paying her less than Moore. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 22.) Rayonier, on the other hand, asserts that any pay differential between Moore and Wright is attributable to differences in their respective job duties and years working at Rayonier. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 22–24.)

The EPA provides that

[n]o employer ... shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality or production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1). A framework of shifting evidentiary burdens is used to analyze claims brought under the EPA. First, a plaintiff must establish a *prima facie* case by showing that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility.'" *Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 590 (11th Cir.1994), *cert. denied,* 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994); *Jones v. Westside–Urban Health Center, Inc.,* 760 F.Supp. 1575, 1578 (S.D.Ga. 1991). To do so, Wright must show that her primary duties as a Lead Scaler are substan-

tially similar to those of Moore. *Jones,* 760 F.Supp. at 1578. Once the *prima facie* case is established, the burden shifts to the employer to show that the pay differential is justified under one of the four affirmative defenses set forth in the EPA. *Mulhall,* 19 F.3d at 590; *Jones,* 760 F.Supp. at 1579. This burden is heavy, and requires the employer to show that gender played no basis for the pay differential. *Mulhall,* 19 F.3d at 590. If the employer carries its burden of proof, then the burden shifts back to the plaintiff to present affirmative evidence that the proffered reason is a mere pretext for discrimination. *Schwartz v. Florida Bd. of Regents,* 954 F.2d 620, 623 (11th Cir.1991).

■ Rayonier contends that Wright cannot establish a *prima facie* case because the jobs held by Moore and Wright are not "substantially equal" in that Moore's job description required him to act as a Relief Woodyard Supervisor, whereas that duty was eliminated from Wright's job description. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 22.) Overwhelming evidence, however, shows that Moore actually never acted as Relief Woodyard Supervisor and that Wright and Moore performed virtually identical job duties. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 22; Pl.'s Resp. to Def.'s Reply Br. at 8.) Furthermore, Wright presents evidence that she earned $34,715 upon her promotion to Lead Scaler, whereas Moore earned $42,290 when he retired.[7] (*Id.*) The Court is satisfied that Wright has established a *prima facie* case.

■ The burden shifts to Rayonier to prove one of the enumerated affirmative defenses. Rayonier contends that the pay differential was based on differences in experience and longevity. (Def. Rayonier's Mem. in Supp. of its Mot. for Summ. J. at 22.) Rayonier emphasizes Moore's thirty-seven years of experience at Rayonier, including prior supervisory experience, when he was named Woodyard Supervisor, as compared

with Wright's fifteen years of experience at Rayonier, with no supervisory experience, when she was promoted to Lead Scaler. (*Id,* at 23.) Also, Rayonier again relies on its argument that Wright's comparison of salaries is incorrect, and argues that the wage differential of $1285 resulting from its suggested comparison is easily justified.

■ Although Rayonier's burden at this stage is heavy, the Court is convinced that it has proven sufficiently that the pay differential was based on longevity and supervisory experience, rather than gender. The Court agrees with Rayonier that a pay differential of $1285 is justified, given that Moore had approximately twenty-two years more experience than Wright.[8]

Finally, Wright may withstand Rayonier's motion by presenting evidence of pretext. Wright, however, fails to present any evidence beyond showing that she worked more hours than Moore but was paid less, and the Court finds no evidence of discriminatory intent in any of the materials submitted by the parties. (Pl.'s Resp. to Def.'s Reply Br. at 8.) Wright never mentioned to anyone at Rayonier that she thought she was paid less than Moore because she was female, yet she repeatedly complained that she should be paid overtime the same as the Scalers. (*See* Wright Dep. at 57–58.) Accordingly, the Court will grant Rayonier's Motion for Summary Judgment on Wright's EPA claim.

## CONCLUSION

The Court carefully has considered the briefs and materials submitted by both parties. Rayonier's Motion for Summary Judgment is **DENIED** on the FLSA claim and **GRANTED** on the EPA claim. The Clerk is directed to enter the appropriate judgment.

---

7. Rayonier argues that a comparison of Wright's salary upon her promotion and Moore's salary upon his retirement is skewed, and suggests that "a more appropriate comparison would be [Wright's] starting salary as Lead Scaler with [Moore's] starting salary as Woodyard Supervisor." (*Id.*) This argument is of no assistance to

Rayonier with regard to Wright's *prima facie* case because the latter comparison nonetheless shows a pay differential of $1285. (*Id.*)

8. The Court agrees with Rayonier's argument regarding the appropriate comparison of salaries.